IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TERESA A. CLAYBORN                                                                    PLAINTIFF

V.                                              NO. 11-3051

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                   DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Teresa A. Clayborn, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the

Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial

evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. §

405(g).

## I.      Procedural Background:

Plaintiff protectively filed her application for SSI on September 15, 2008, alleging an inability

to work due to "Neck and shoulder injury from car accident." (Tr. 13, 131).  An administrative

hearing was held on March 22, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 23-

42).

By written decision dated June 25, 2010, the ALJ found Plaintiff had the following severe

impairment - status post disc arthroscopy. (Tr. 15).  However, after reviewing all of the evidence

presented, she determined that Plaintiff's impairment did not meet or equal the level of severity of any

-1-

impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15).  The ALJ found that Plaintiff had the residual functional capacity (RFC) to:

> perform the light work as defined in 20 CFR 416.967(b) except occasional overhead reaching, occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes, or scaffolds.

(Tr. 15).  With the help of a vocational expert (VE), the ALJ determined Plaintiff would be capable of performing jobs such as deli cutter-slicer; retail sales attendant; or counter attendant, luncheon or coffee shop.  (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 10, 2011.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.  (Doc. 1).  Both parties have filed briefs and this case is before the undersigned for report and recommendation.  (Docs. 6, 7).

## II.    Evidence Presented:

Plaintiff was born in 1970 and completed high school and some college courses.  (Tr. 27, 126). On July 22, 2008, Plaintiff was involved in a motor vehicle accident, which resulted in her being taken to Baxter Regional Medical Center, where the impression given was: 1) status post motor vehicle accident; 2) concussion; 3) chest wall pain; 4) left shoulder pain; and 5) right hand pain.  (Tr. 235). A CT of Plaintiff's cervical spine indicated no definite evidence for displaced fracture or subluxation, no soft-tissue swelling was noted, and good alignment was noted.  (Tr. 237).  A CT of the chest with IV contrast resulted in a finding that the mediastinum[1] appeared essentially normal.  (Tr. 238).  There

---

[1]Mediastinum - 1.  A median septum or partition.  2.  The mass of tissues and organs separating the two pleural sacs, between the sternum anteriorly and the vertebral column posteriorly and from the thoracic inlet superiorly

AO72A
(Rev. 8/82)

was some intermixing of the blood and pulmonary vessels, but it was not believed to be a pulmonary embolism. The liver, spleen, and kidneys appeared to be essentially normal, the lungs revealed no pneumothorax[2] or hemothorax,[3] and there was not a definite displaced rib fracture seen. (Tr. 238). A CT of Plaintiff's head without contrast revealed no evidence for intracranial hemorrhage or depressed skull fracture. (Tr. 239). Three x-ray views of the left shoulder revealed no acute fracture or dislocation in the left shoulder, and three views of the right hand indicated that there was a radiopaque density in the region of the second metacarpal head, and a suggestion of a soft-tissue laceration. (Tr. 241). However, no acute fracture or dislocation was seen. There was some abnormal density at the level of the proximal interphalangeal joint of the middle finger which may represent a foreign body. (Tr. 241). Plaintiff was given prescriptions for Flexeril and Ibuprofen and told to follow up with her primary care physician in the next few days if she was not improving. (Tr. 235).

On July 26, 2008, Plaintiff returned to the emergency room with continued severe shoulder pain and mild hypoxia.[4] (Tr. 226). Her main complaint was her left-sided neck pain and "exquisite" left shoulder pain, with inability to move her left shoulder. (Tr. 226). Dr. Terry G. Green, of General Orthopedics, diagnosed Plaintiff with: 1) motor vehicle accident; 2) severe left shoulder pain; 3)

---

to the diaphragm inferiorly. It contains the heart and pericardium, the bases of the great vessels, the trachea and bronchi, esophagus, thymus, lymph nodes, thoracic duct, phrenic and vagus nerves, and other structures and tissues. The mediastinum is divided into a superior region and an inferior region that comprises anterior, middle, and posterior parts. Dorland's Illustrated Medical Dictionary 1134-1135 (31st ed. 2007).

[2]Pneumothorax - An accumulation of air or gas in the pleural space; three types are distinguished: *traumatic p., primary spontaneous p.,* and *secondary spontaneous p.* It was formerly sometimes induced for treatment of pulmonary tuberculosis; see *articial p.* Id. at 1497.

[3]Hemothorax - A pleural effusion containing blood. Id. at 854.

[4]Hypoxia - Reduction of oxygen supply to tissue below physiological levels despite adequate perfusion of the tissue by blood. Id. at 921.

-3-

cervical strain; and 4) pulmonary contusions. (Tr. 227). Dr. Green noted that he would be ordering a shoulder CT scan and a cervical MRI, and thought there was a fairly high likelihood that Plaintiff might have a scapular fracture or occult proximal humeral fracture or rib fractures. (Tr. 227).

Also on July 26, 2008, an AP portable chest x-ray demonstrated the heart, great vessels, and lung fields were without active process. (Tr. 230). A CT of Plaintiff's left shoulder without contrast was performed on July 28, 2008, and revealed perhaps early minimal narrowing of the left acromioclavicular joint, nothing significant. (Tr. 231). No abnormality in the left shoulder joint was seen and there was no fracture or dislocation. (Tr. 231).

On July 28, 2008, an MRI of the cervical spine revealed some abnormal bulging/minimal protrusion of disc material at C3-C4 and C4-C5. (Tr. 232). "These changes flattened the thecal sac centrally at C3-C4 centrally and bilateral paramedian and centrally at C4-C5." (Tr. 232). On July 29, 2008, Dr. Green recommended that Plaintiff start physical therapy for her neck and shoulder pain, and stated that it was possible that she would require surgical intervention. (Tr. 280). If she failed to get relief with therapy, "we will consider surgery for the cervical disk." (Tr. 280). Plaintiff was then discharged, having less pain, and was advised that cervical spine surgery might be necessary. (Tr. 225). Plaintiff had an increased return of the neck pain and left shoulder pain, and on August 1, 2008, presented to the emergency room and was admitted for further monitoring, treatment, and pain control. (Tr. 212). Plaintiff was found to have decreased left upper extremity strength and very limited range of motion secondary to pain. (Tr. 213). Plaintiff was able to grip with both hands, but held her shoulder close to her body because movement caused pain. (Tr. 214). The plan was to admit Plaintiff to a general surgery bed. (Tr. 213). On August 6, 2008, Dr. Green recommended bedrest and

AO72A
(Rev. 8/82)

consideration for a possible disk surgery.  (Tr. 216).

On August 8, 2008, Dr. Green performed a total disk arthroplasty[5] C4-5 on Plaintiff.  (Tr. 217).  Plaintiff was sent to the recovery room in stable condition without complications (Tr. 217), and was discharged on August 9, 2008.  Dr. Green noted upon discharge that Plaintiff had diminished left neck and shoulder pain.  (Tr. 211).  Dr. Green reported that Plaintiff was "doing great," her wounds were healed and that she had full range of motion in her extremities.  (Tr. 269).  The x-ray findings were noted as total disk in good position.  (Tr. 269).

On August 15, 2008, Plaintiff rated pain in her neck as a "7" on a scale of 1 to 10.  (Tr. 276).  She reported that she could lift very light weights, but could hardly do any work at all, could not drive her car, and could not do any recreational activities at all.  (Tr. 276, 279).

On August 19, 2008, Plaintiff reported to the Baxter Regional Medical Center Emergency Room, complaining of anxiety and neck pain.  (Tr. 204).  The impression given was anxiety and constipation.  (Tr. 205).  On August 20, 2008, Dr. Green reported that x-rays showed the total disk arthroplasty was unchanged from previous x-rays, and diagnosed Plaintiff with postop total disk arthroplasty C4-C5, and nausea, vomiting, and constipation.  (Tr. 274).

On August 25, 2008, Plaintiff followed up with Dr. Green, complaining of some pain and a little bit of shoulder pain, "but she is better than she was before surgery."  (Tr. 270).  Another report of the same date indicated that Plaintiff rated her pain as a "7" out of 10.  (Tr. 273).

On October 30, 2008, a Physical RFC Assessment was completed by non-examining

---

[5]Arthroplasty - Plastic surgery of a joint or of joints; the formation of movable joints.  Called also *joint replacement*.  Id. at p. 160.

physician, Dr. Alice M. Davidson. (Tr. 261-268). Dr. Davidson found that Plaintiff could perform light work, and was limited in reaching all directions (including overhead). (Tr. 262, 264).

In a March 5, 2009 letter from Dr. Green to Plaintiff's personal injury attorney, Dr. Green reported that it was more likely than not that Plaintiff would require future surgery, and that she had been a very cooperative patient, and "since her surgery she has recuperated nicely and has had no complaints." (Tr. 363). Dr. Green noted that Plaintiff did have an artificial disk in her neck and that this was a relatively new procedure, so he did not have a long-term, 20-year follow-up for this type of procedure. (Tr. 363).

On May 27, 2009, Plaintiff presented herself to Baxter Regional Medical Center, complaining of lower back pain that began on the previous Friday. (Tr. 303). She reported that she went to a massage therapist who told her she needed to be seen by a doctor, and that "[i]t feels like bone on bone pressure and grinding." (Tr. 303). Plaintiff was diagnosed with back pain. (Tr. 305).

On July 24, 2009, Plaintiff reported that she hurt all over and cried for no reason. (Tr. 342). On November 12, 2009, Plaintiff had her eyes checked and was written a prescription for glasses. (Tr. 344).

In what appears to be a clinical comment from Dr. Bruce D. Robbins, of Twin Lakes Neurology, Dr. Robbins reports that Plaintiff brought in a visual field testing, which showed a significant decrease in visual fields in the right eye. (Tr. 361). He further reported that based on the physical examination, he questioned whether the tests were accurate in a sense and "can a patient fake the symptoms." (Tr. 361). The reason he questioned this is "because the right eye shows decreased visual fields as does both eyes but when the right eye is covered the visual fields improve bilaterally, which

-6-

doesn't make sense." (Tr. 361).   By report dated December 15, 2009, Dr. Robbins noted that no abnormalities were appreciated on the MRI scan of the head, with and without contrast. (Tr. 347).

At the hearing before the ALJ, Plaintiff testified that on the day of her accident, July 22, 2008, she was on her way to work at Sean's Restaurant. (Tr. 29).  She testified that her six year old child lived with her. (Tr. 31).  She testified that her complete neck from front to back hurt all the way into her mid back underneath her shoulders, and that she had constant pain in her left arm and shoulder. (Tr. 35).  She further testified that her boyfriend helped her with lifting, and that he usually did the laundry, the cooking, and all of the household things. (Tr. 35).  He also helped her with her daughter "the days that I cannot motivate." (Tr. 35).  She testified that she did not drive more than two miles if needed, and could sit for maybe 15 to 20 minutes without having to readjust. (Tr. 35).  She stated that about 80 to 90% of her day she was reclined, with her feet elevated. (Tr. 36).  She stated that she was not aware of any side effects of the medication she took. (Tr. 36).  She testified that at times she would get really shaky, and had to actually hold her left hand while she wrote. (Tr. 37).  She also said that she lost all peripheral vision in her right eye, and the doctor related it to the accident.  (Tr. 37).  She testified that pushing/pulling motion caused problems, and she could not do twisting and turning from her waist, could not bend down, stoop down, or squat down, and had headaches a lot. (Tr. 39).  She also stated that when she traveled a long distance, she always wore a neck brace because it stabilized her head.  (Tr. 39-40).

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  <u>Ramirez v. Barnhart</u>, 292 F. 3d 576, 583 (8th Cir.

AO72A
(Rev. 8/82)

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or

-8-

combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

## IV.   Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ failed to fully and fairly consider the disabling affects of the pain Plaintiff experiences due to residuals from her motor vehicle accident; and 2) The ALJ failed to properly access Plaintiff's RFC when finding that Plaintiff retained the capacity to perform a limited range of light work.  (Doc. 6).

### A.  Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

-9-

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Plaintiff contends that her impairments were disabling. However, the evidence of record does not support this conclusion.

The ALJ recognized that it was reasonable to assume that Plaintiff did experience some limitations due to status post disc arthroscopy. (Tr. 16). However, she also stated that the degree to which Plaintiff's impairment was functionally limiting was an issue that was very much open to question. (Tr. 16). The ALJ noted that subsequent to the surgery by Dr. Green, there were reports that the level of her pain was improved. In fact, on October 20, 2008, a report from Baxter Regional Orthopaedics revealed "no pain." (Tr. 271). Even more telling is Dr. Green's letter to Plaintiff's personal injury attorney dated March 05, 2009, wherein Dr. Green states, in pertinent part, that:

> It is more likely than not that Theresa will require future surgery. She has a total disk arthroplasty. Unfortunately, no one at this stage knows just how long this device will last. Since she is relatively young, it is not likely that it will last a lifetime. I expect within 10-20 years she will need some type of revision of that articular device in the cervical spine.
> . . .
> She has been a very cooperative patient and since her surgery she has recuperated nicely and has had no complaints. I hope it will continue to be that way. However, we know she does have an artificial disk in her neck. This is a relatively new procedure, so we do not have long-term, like 20-year followup for this type of procedure.

(Tr. 363).

In her decision, the ALJ stated that the factor of subjective pain and discomfort had been duly recognized and considered. (Tr. 17). She also noted, however, that the mere inability to work without some degree of pain or discomfort, of minimal to mild nature, did not necessarily constitute a "disability" for Social Security purposes. (Tr. 17). She concluded that Plaintiff's degree of pain relief seeking

-10-

behavior and treatment was not indicative of a degree of pain that would limit activities beyond the scope of her RFC determination. The ALJ then addressed the fact that Plaintiff described somewhat limited daily activities, and concluded that her reported limited daily activities were outweighed by other factors. (Tr. 17). She noted that no physician placed any functional restrictions on her activities that would preclude work activity with the previously-mentioned restrictions. Although Plaintiff testified that her doctor told her she would need additional surgery for her neck pain in three years, this is contradicted by Dr. Green, who, as indicated above, reported that Plaintiff would need "some type of revision" in "10-20 years." (Tr. 17, 363). A 2009 examination reported that Plaintiff was "very well built," "strong," and "muscular." (Tr. 356). No physician opined that Plaintiff was disabled and unable to engage in work. See McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003)(holding that ALJ's RFC determination was supported by substantial evidence when no physician indicated Plaintiff was permanently disabled and Plaintiff had good muscle strength, wide range of motion, and could perform most daily activities).

The undersigned is of the opinion that there is substantial evidence to support the ALJ's credibility findings.

**B. RFC Assessment:**

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into

-11-

the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The ALJ determined that during the relevant time period of September 15, 2008, through June 25, 2010, Plaintiff could perform work at the light level, reduced by an ability to perform only occasional reaching, climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and that she could not climb ladders, ropes, or scaffolds. (Tr. 15). Plaintiff merely argues that from a review of the objective medical evidence, along with Plaintiff's testimony and descriptions of her limitations, "it is clear that the Plaintiff does not retain the ability to perform light work and thus the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence." (Doc. 6 at p. 17). Plaintiff points to no evidence showing that her conditions were disabling or caused any functional limitations above what the ALJ found she could perform.

The undersigned therefore believes there is substantial evidence to support the ALJ's RFC determination.

**D.    Hypothetical Proposed to VE:**

In the ALJ's hypothetical written interrogatory posed to the VE, he stated:

> 7.  Assume a hypothetical individual who was born [in 1970] has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your

-12-

response to question #6.  Assume further that this individual has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional overhead reaching, occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling, and no climbing of ladders, ropes or scaffolds. . . .

10.  Could the individual described in item #7 perform any unskilled occupations with jobs that exist  in the national economy?

(Tr. 187-188).  In response, the VE gave the following jobs: 1) Deli cutter-slicer; 2) Retail sales attendant; and 3) Counter attendant, lunchroom or coffee shop.  (Tr. 188).

The undersigned believes the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing jobs such as deli cutter-slicer, retail sales attendant, or counter attendant, luncheon or coffee shop.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.      Conclusion:**

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of the undersigned's report and recommendation in which to file written objections pursuant to 28 U.S.C. §636 (b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific**

-13-

**to trigger de novo review by the district court.**

DATED this16th day of July, 2012.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-